## Knupp, Appellant, *v.* Brooks.

*Tax sales—Payment of taxes—Evidence.*

In an action of trespass for cutting timber on land, where the case turned on the validity of a tax title in the plaintiff for thirty acres of land, it appeared that the land in controversy was a portion of an original survey of 484 acres. One of defendant's predecessors in title J., purchased 364 acres of the survey after 120 acres had been sold to another person. After J. acquired title, the whole survey was assessed at the original acreage. J.'s uncontradicted testimony was that in a certain year he went to the county treasurer to pay his taxes on the 364 acre tract, and other lands which he owned, that he demanded the taxes on the separate numbers, and that when he received them he paid the whole amount of the taxes due. The treasurer's entry showed a payment on only 334 acres instead of on 364 acres of the 484 tract. The taxes on the 120 acres were not paid and subsequently the treasurer sold 150 acres. The 120 acres were subsequently redeemed. The sales books showed that both before and after the sale, J. paid to the treasurer regularly the tax on the 364 acres. *Held,* that a verdict and judgment for the defendant should be sustained.

Argued April 30, 1900.  Appeal, No. 106, Jan. T., 1900, by plaintiff, from judgment of C. P. Warren Co., Dec. T., 1899, No. 6, on verdict for defendant in case of Alice B. Knupp v. Arthur Brooks.  Before McCollum, C. J., Mitchell, Dean, Fell and Brown, JJ.  Affirmed.

Trespass for cutting timber on thirty acres of land in Croydon township.  At the trial it appeared that the plaintiff claimed title under a tax deed to D. I. Ball.  Defendant claimed title under H. A. Jamison.  It appeared that the land was a portion of an original survey of 484 acres.  Jamison acquired title to 364 acres after 120 acres had been conveyed to one English.

When Jamison was on the stand the following offer was made :

Counsel for defendant proposes to prove by this witness that he went to the treasurer to pay the taxes on the land he owned on tract No. 17 for the years 1874 and 1875, previous to the sale of this land, and told him that he wanted to pay all the taxes on tract No 17, except 120 acres, and that he paid the treasurer all the money that he demanded for the taxes that were assessed on tract No. 17 for the years 1874 and 1875 except the 120 acres.  This is for the purpose of showing that he undertook to pay his taxes on tract No. 17, and that the mistake, if any, was a mistake of the treasurer.

Objected to, first, that the treasurer spoken of is dead. Second, that the tax receipt is the best evidence of what he intended to pay.

Objection overruled, and exception sealed for plaintiff. [1]

Defendant's counsel offer in evidence the sales list from the treasurer of Warren county from and including 1878, up to and including 1898, to show that the taxes of these pieces of land, which we have shown in H. A. Jamison, were paid by him during all those years, and to show that D. I. Ball or Mrs. Knupp has paid no taxes on those lands.  This taken in connection with the testimony already in that no claim has been asserted under this tax title from its inception in 1876 to 1899, to show in connection with that evidence want of title to the land in controversy in the plaintiff, and the evidence of title in H. A. Jamison and those claiming under him.

Objected to as incompetent and irrelevant.

Objection overruled and exception sealed for plaintiff. [2] Verdict and judgment for defendant.   Plaintiff appealed.

*Errors assigned* among others were (1, 2) rulings on evidence, quoting the bill of exceptions.

*W. J. Knupp*, for appellant.

*W. W. Wilbur*, of *Wilbur & Schnur*, with him *James W. Wiggins* and *W. E. Rice*, for appellee.

OPINION BY MR. JUSTICE DEAN, October 11, 1901 :

This was an action of trespass for cutting timber.  A warrant was issued July 23, 1836, to Lansing Wetmore and Benjamin Bartholomew, for the survey of a tract of land numbered lot 17, in Croyden township, Warren county.  The survey was made and returned as 454 acres, 154 perches, and patent issued therefor to one Conoven.  The title, by sundry conveyances, became vested in one Wetmore who, by deed of August 2, 1860, conveyed by metes and bounds 120 acres in the northwestern corner to Robert Campbell ; the lines being marked on the ground.  By deed dated July 3, 1864, Wetmore conveyed all of tract 17, except the 120 acres theretofore conveyed to Campbell, to H. A. Jamison, being 364 acres.

In 1874 and 1875, the whole tract, without regard to the division made by Wetmore, was assessed on the unseated list as 484 acres, to the Kinzua Oil Company, and so placed on the county treasurer's sales list of unseated lands.  While it thus stood upon the treasurer's books, H. A. Jamison, the owner, went to the treasurer's office, to pay the taxes upon No. 17, except the 120 acres conveyed to Campbell, who afterwards conveyed it to one English.  He testified, he told the treasurer he wanted to pay the taxes on No. 17, less the 120 acres which had been severed ; that besides this tract numbered 17, he wanted to pay on Nos. 14, 16 and 18, in Kinzua township ; that within a day or two the treasurer gave him a list of the taxes assessed and he gave him a check for the full amount demanded, and the treasurer gave him a receipt ; that he has lost or mislaid the receipt, which he cannot find, although he has made a

careful search for it; and that he has always paid the taxes in the same way.

As already noticed, the assessment was on the whole tract, 484 acres; deducting the severed 120 acres, sold to English, left 364 acres, on which the taxes were unpaid, but the treasurer enters on his sales book 334 acres paid by H. A. Jamison, June 12, 1876. This left thirty acres unpaid, unless the treasurer made a mistake in his entry. That Jamison called on the treasurer for the purpose of payment cannot be questioned, and that at that time he paid taxes on the whole or part of the tract cannot be questioned. English had not paid on the 120 acres, and sale was made of 150 acres of No. 17, to D. I. Ball, presumably made up of the 120 acres and the thirty acres alleged deficiency on the 364 acres. English afterwards redeemed the 120 acres, leaving to mature in the hands of the purchaser the deed to the extent of thirty acres.

Out of the facts as stated arose this controversy: The title of Ball, by sundry conveyances, was vested in this plaintiff, who surveyed off and took possession of the thirty acres on which the timber was cut. The verdict was for defendant and plaintiff appeals, preferring twenty-one assignments of error. The first and second, if overruled, render a consideration of the others unnecessary; they relate solely to the testimony of H. A. Jamison, that he had paid the taxes on the whole 364 acres. It is complained, that the court stated to the jury that this evidence was uncontradicted. We have carefully and thoroughly examined this record and find that the learned judge was not mistaken; the story on its face was credible. Jamison was a large owner of unseated lands; he knew the taxes must be paid on them before day of sale; he went to the treasurer where the assessment would be found and demanded the amount of taxes on the separate numbers; the treasurer gave it to him and he paid it. It is admitted, and the sales book shows, he paid the amount assessed on all the other tracts except this; but the entry shows he paid on only 334 acres of No. 17, instead of on 364. Why should he pay on all but a fraction of the tract when he knew the penalty of default was a sale? Then the treasurer does not definitely say the sale was on default of payment on thirty acres; he sells 150 acres. He may have estimated English's 120 acres

as 150. The sales book shows that both before and after this sale Jamison paid to the treasurer regularly the tax on the 364 acres. We can find nowhere any contradiction in his testimony; the court and jury doubtless both gave it full credit and the court might properly on it alone have instructed the jury, that there was no unpaid tax to support the sale to Ball.

The court left the credibility of Jamison to the jury and they found in his favor, but if they had found otherwise, the court would have been bound to set the verdict aside as palpably against the uncontradicted evidence. We have more than once said, that where the jury finds a verdict which the court is bound to at once set aside, it may give peremptory instruction as to what their verdict should be. Such instruction would have been proper in this case, but, as the jury found for defendants, no harm resulted to the plaintiffs.

Our refusal to sustain appellant's first assignment makes a discussion of the other twenty immaterial. The judgment is affirmed.