## Baker *versus* Fehr et al.

1. What is negligence and what is ordinary care must be submitted to the jury if there be any dispute or reasonable doubt as to the facts claimed to establish the alleged negligence, or as to the just inferences to be drawn therefrom. If, however, the facts be admitted or ascertained, it is the province of the court to declare the law thereon.

2. In an action for death or injury alleged to have been caused by the negligence of the defendant, the burden is upon the plaintiff to prove that the negligence of the defendant caused the death or injury, without contributory negligence on the part of the person killed or injured.

3. Parties lawfully using a public street owe to each other the duty of reasonable and ordinary care, and each is justified in assuming that the other will so act.

January 12th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas, No. 3, of *Philadelphia county:* Of January Term 1880, No. 360.

This was an action on the case by the widow and minor children of John Fehr, deceased, against John W. Baker, Jr., to recover damages for the death of the said John Fehr, caused by the alleged negligence of one of defendant's servants, the driver of an ice-wagon, in running over the said Fehr in a public street of the city of Philadelphia.

The undisputed facts, as developed on the trial, before YERKES, J., were as follows:

On the morning of December 2d 1878, about 7 o'clock, the deceased got off the front platform of a passenger car in which he had been riding southward along Sixth street, and which had stopped just south of Walnut street. He turned partly round and reached out to take a basket which was on the front platform of the car. At this moment an ice-wagon belonging to the defendant was being driven at a trot along Sixth street in the same direction with the car and nearly abreast with it. As the car stopped, the driver of the wagon was in the act of passing the car, to the imminent danger of the deceased. Several persons called out to warn him of his danger, and the wagon driver instantly shouted "Look out," and endeavored to stop his mules, but without success. The witnesses testified that Fehr appeared not to hear the warning calls, and backed or walked right against one of the mules, when he was caught by the swingle-tree of the ice-wagon, thrown down under the wheels and run over, receiving the injuries which caused his death.

The testimony of all the material witnesses is referred to in detail in the opinion of this court.

The defendant presented, inter alia, the following point:

[*Baker v. Fehr.*]

" 8. There is no such evidence of negligence in this case as ought reasonably to satisfy you thereof, and, therefore, I instruct you that upon the whole case your verdict should be for the defendants." Refused.

Verdict for the plaintiffs for $2000 and judgment thereon. The defendant took this writ of error, assigning for error, inter alia, the refusal of the above point.

*Silas W. Pettit* (with whom was *John R. Read*), for the plaintiff in error.—Where no facts have been shown from which negligence by the defendant causing the accident may reasonably be inferred, the question of negligence should not be submitted to the jury. Whether a given state of facts, admitted or proved, constitutes negligence, is a question of law to be declared by the court: Goshorn *v.* Smith, 8 W. N. C. 289; Catawissa Railroad Co. *v.* Armstrong, 2 P. F. Smith 282; Railroad Co. *v.* Stinger, 28 Id. 219; Gerety *v.* Railroad Co., 31 Id. 274; Hoag *v.* Railroad Co., 4 Norris 293; Philadelphia & Reading Railroad Co. *v.* Yerger, 23 P. F. Smith 121; Philadelphia & Reading Railroad Co. *v.* Heil, 5 W. N. C. 91; Clark *v.* Philadelphia & Reading Railroad Co., Id. 119; Pennsylvania Railroad Co. *v.* Fries, Id. 545; Hestonville Passenger Railway Co. *v.* Connell, 7 Norris 520. In this case the defendant was in the lawful use of the highway, driving at a moderate rate of speed, and he had no reason to anticipate that the deceased would suddenly place himself in a position of danger by jumping off the *front* platform of the car, directly in front of his team. On discovering the danger he hallooed to the deceased and used his utmost endeavors to stop, but the deceased, by his action in stepping against the mules, increased the danger and rendered the accident inevitable. Under the admitted facts, there was no evidence of negligence by the defendant, and the case should not have been submitted to the jury.

*A. S. L. Shields*, for the defendant in error, did not appear, and presented no paper-book.

Mr. Justice MERCUR delivered the opinion of the court, March 28th 1881.

This action was brought by the widow and children of one killed by an unfortunate accident. A right to recover rests on proving that negligence of the plaintiff in error caused the death, without contributory negligence of the person killed. The question now is, whether there was sufficient evidence of negligence on the part of the plaintiff in error to justify its submission to the jury.

The burden of proving the negligence is on the defendants in error: McCully *v.* Clarke & Thaw, 4 Wright 399; Railway Co. *v.* Hummell, 8 Id. 375; P. & R. Railroad Co. *v.* Yerger, 23 P. F. Smith 121.

[Baker *v*. Fehr.]

This is not the case of a passenger killed or injured by a common carrier. Both parties to the accident were in the lawful use of a public street in this city. Each owed substantially the same duty to the other. That duty was to use the street with reasonable and ordinary care. Each was justified in assuming that the other would so use it. What is negligence and what is ordinary care must generally be submitted to the jury. This is so, if there be any dispute as to the acts claimed to establish the alleged negligence; but negligence is not to be found without evidence. It is not to be presumed from the mere fact of the occurrence of an accident causing injury or death: Gramlich *v*. Wurst et al., 5 Norris 74. Negligence is a question for the jury, if there be reasonable doubt as to the facts tending to prove it, or as to the just inferences to be drawn therefrom: McKee '*v*. Bidwell, 24 P. F. Smith 218.

The province of the jury is to find facts. If the facts be admitted or ascertained, it is the duty of the court to declare the law thereon: Catawissa Railroad Co. *v*. Armstrong, 2 P. F. Smith 282; Philada. & Reading Railroad Co. *v*. Yerger, *supra;* Goshorn *v*. Smith, 8 W. N. C. 289.

The main question in this case arises under the seventh assignment. It is whether there was any evidence of negligence on the part of the plaintiff in error to be submitted to the jury? If there was, no just complaint can be made to the charge of the court.

This leads us to an examination of the evidence. There is no substantial conflict in the testimony of the witnesses. Fehr was a passenger in a street railway car moving down Sixth street; Gerlach was driving an ice-wagon of the plaintiff in error. It was in the rear of the street car, and moving in the same direction, at a rate of from four to six miles an hour. The car stopped just south of Walnut street. The driver of the wagon continued on for the purpose of passing the car. As his mules came opposite the car, Fehr, with a market basket on his arm, got off the front platform. A collision resulted between him and the wagon, causing the injury which resulted in his death.

On the trial, five persons who were eye-witnesses to the transaction testified. Two were called by the defendants in error, and three by the plaintiff in error. The first witness was driving a bread-wagon behind the ice-wagon. He merely heard some one halloo, and saw the man picked up from under the wheels of the wagon. The second witness called was the driver of the railway car. He swore: " I saw him run over; heard two or three voices cry; deceased walked deliberately against the mules; he paid no attention to cries; called ' Go away from those mules;' swingletree caught him and threw him down, and the wheels went over him. Driver stopped wagon as soon as he could; he was trying

[Baker *v.* Fehr.]

his best to stop when he called to him." He further testified that Fehr was walking at a moderate gait, and "ran right against the mules."

The first witness called by plaintiff in error said his attention was first attracted by seeing decedent standing in the street, taking the basket from the car; that he "was coming north, was opposite and a little south of the car; when Fehr was taking the basket from the car, the ice-wagon was crossing Walnut street. I hallooed 'Look out.' The driver of the ice-wagon hallooed after I did, 'Look out.' Fehr paid no attention; his back was towards Walnut street, his face south; driver of ice-wagon pulled in when he hallooed; * * the driver pulled in all he could, and also called to deceased." Witness further testified: "We both hallooed very loud; the man did not appear to hear. It all occurred in about the time it takes to count five." The conductor of the car testified he was on the rear platform; did not see man get off; heard driver halloo; saw man struck by the swingle-tree; he was standing sideways towards the car, taking basket off; he was looking west (south?); it took about as long as it takes me to tell it; driver pulled in on mules best he could."

The driver of the ice-wagon swore the mules were past the front of the back platform when he first saw the man, and that he made an effort to hold up as soon as he saw him; that it was a dark, foggy morning; by his jumping off in front, and having dark clothes on, it frightened one of his mules, which was "skittish," and gave one jump, so he could not hold it in. He also testified that he and the other witness hallooed to Fehr.

Thus it is shown that Fehr left the car in front, which is unusual, and not likely to have been anticipated by the driver. As soon as the latter saw Fehr, he promptly, by words and by action, endeavored to prevent the collision. He left nothing undone that was practicable for him to do. Fehr first stood in an exposed and dangerous position. He gave no heed to words of warning addressed to him in a loud voice on both sides. When he did move, instead of trying to avoid the danger, he "walked right against the mules." The driver had no reason to expect such action. He was therefore not required to guard against conduct which no person would have anticipated.

We discover no evidence from which negligence of the driver could reasonably be inferred, and it is settled law that a jury shall not be permitted arbitrarily and without evidence, to infer there was negligence: Phila. & Reading Railroad Co. *v.* Yerger, *supra*, and cases there cited; Goshorn *v.* Smith, *supra*. If there was any negligence, it appears to have been by the unfortunate decedent. It follows the learned judge should have affirmed the eighth point submitted by the plaintiff in error.

Judgment reversed.