## Altsman *v.* Kelly et al., Appellants.

Argued October 2, 1939.   Before KEPHART, C. J., SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

*E. O. Golden,* with him *A. E. Kountz* and *C. A. Fry,* of *Kountz & Fry,* for appellants.

*George I. Bloom,* of *Bloom & Bloom* and *Arnold J. Lange,* for appellee.

OPINION BY MR. JUSTICE BARNES, November 27, 1939:

On March 2, 1936, about eleven o'clock in the evening, plaintiff, while crossing the intersection of Fifth and Bellefield Avenues, in the City of Pittsburgh, was struck and severely injured by an automobile truck owned by the defendant company, and operated by its employee, the individual defendant. Fifth Avenue, a main thoroughfare for traffic, with double street car tracks thereon, runs approximately east and west at the place where the accident occurred, and is intersected diagonally by Bellefield Avenue, which extends generally north and south. The crosswalk for pedestrians from the southwest to the northwest corners of the intersection is upon an angle toward the east, and is 71 feet in length, although Fifth Avenue is only 48 feet from curb to curb. The double tracks, totaling 14 feet 4 inches in width, are 21 feet from the south curb, and approximately 13 feet from the north curb of Fifth Avenue.

The plaintiff testified that she had been a passenger on an east-bound Fifth Avenue trolley car, and had alighted

therefrom when the car made its stop at Bellefield Avenue. She then walked to the southwest corner, where she waited until the trolley car passed, and the traffic light turned green for Bellefield Avenue. After looking to the left and observing that there was no oncoming traffic, she looked to her right or east, where she had a view for a distance of 320 feet to the point where Fifth Avenue curves toward the east, and there likewise the way was clear of vehicles. She started across the intersection to the northwest corner. As she neared the first rail of the trolley tracks, she looked again, and this time she noticed automobile headlights approaching from her right, about 300 feet distant. She continued to advance, directing her attention to the crosswalk upon which she was walking, which was rough and slippery from a recent rain, and at the same time watching for traffic upon Fifth Avenue.

She further testified that when she was between the second and third rails of the tracks she glanced again to the right and saw the defendant's truck bearing down upon her about 19 feet away, traveling west on Fifth Avenue. She thrust herself forward in an effort to escape injury, but the truck suddenly swerved and struck her with such force that she was hurled twenty feet from the place of impact. The truck was running upon the first or south rail of the tracks, over which plaintiff had just passed, and was, in consequence, upon the left or wrong side of Fifth Avenue, according to the direction in which it was proceeding.

Two disinterested witnesses corroborated plaintiff's testimony that the traffic light was green for Bellefield Avenue, and in plaintiff's favor, from the time she left the southwest curb until she was struck. It turned red for Bellefield Avenue almost immediately after the accident. These witnesses also said that at the time she was struck, plaintiff was walking upon the usual pedestrian crossing from the southwest to the northwest corners of the intersection. One of the witnesses, who

was operating her car on Fifth Avenue in the same direction as and immediately behind defendant's truck, stated that the light did not turn green for Fifth Avenue traffic until her own car reached the intersection; that just prior thereto the truck had passed her upon the left at a time when she was driving astride the north rail on Fifth Avenue. Her speed was then thirty to thirty-five miles an hour, and she testified that the truck had overtaken and passed her, continuing ahead at a greater speed.

As a result of the injuries received, the plaintiff is permanently disabled, and prevented from engaging in any gainful occupation. After trial in the court below the case was submitted to the jury which rendered a verdict for plaintiff. Defendants' motions for new trial and for judgment non obstante veredicto were overruled by the court in banc, and, judgment having been entered upon the verdict, these appeals followed.

The defendants' contentions are (1) that there is insufficient evidence of negligence on the part of the driver of the truck to entitle plaintiff to recover; (2) that plaintiff was guilty of contributory negligence.

A review of the record convinces us that the charge of negligence against the defendants is fully sustained by the evidence. The jury was justified in finding that the defendant driver crossed the intersection at a speed in excess of thirty miles an hour, that he went through a red light, that he was driving to the left of the regular traffic lane, that he failed to observe the presence of the pedestrian rightfully on the crosswalk in time to avoid striking her, and that he swerved the truck suddenly in her direction. On approaching the crossing it was his duty, as we have so often said, to maintain a high degree of vigilance, to anticipate the presence of pedestrians within the intersection and to have his car under such control that he could stop at the shortest possible notice, or alter its direction, in order to avoid striking persons committed to the crossing: *Newman v. Protec-*

*tive M. S. Co.,* 298 Pa. 509; *Ferguson v. Charis,* 314 Pa. 164; *Goodall v. Hess,* 315 Pa. 289; *MacDougall v. American Ice Co.,* 317 Pa. 222; *Smith v. Wistar,* 327 Pa. 419; *Smith v. Shatz,* 331 Pa. 453.

While a pedestrian crossing an intersection with a green traffic light in his favor, does not have an absolute right of way for the full distance of the crossing, and must continually be upon guard for his safety: *Schroeder v. Pittsburgh Rys. Co.,* 311 Pa. 398; *Jones v. Pittsburgh Rys. Co.,* 312 Pa. 450; *Dando v. Brobst,* 318 Pa. 325, here no testimony was offered to support the defendants' contention that the plaintiff failed to exercise the degree of watchfulness required of pedestrians under such circumstances, or that she carelessly stepped into the path of approaching danger. Under the facts here appearing, the plaintiff had the superior right of way, for the traffic light was in her favor until the vehicle struck her: *Maselli v. Stephens,* 331 Pa. 491, 495.

Defendants objected to the admission of any testimony with respect to the disregard by the driver of the truck of the red traffic signal at the intersection, under the general allegations of plaintiff's statement of claim. They assert that this charge of negligence should have been specifically pleaded, if it were to be proved. We find no merit in this contention. The averments of the statement are sufficiently broad to include this evidence, and it was not error to permit it to be introduced: *McNulty v. Horne Co.,* 298 Pa. 244; See also *Nark v. Horton Motor Lines, Inc.,* 331 Pa. 550; *Lynch v. Bornot, Inc.,* 120 Pa. Superior Ct. 242. It was relevant not only as to defendants' negligence, but also with respect to the question of plaintiff's contributory negligence, for the presence of a traffic signal has an important bearing upon the pedestrian's duty of care. See *Newman v. Protective M. S. Co.,* supra, (p. 512).

Under the evidence plaintiff cannot be held contributorily negligent as a matter of law. It is clear from the record that she looked carefully before entering upon

the crossing, that she proceeded across in reliance upon a favorable traffic signal, that she kept to the crosswalk, and that she looked at least twice again as she advanced to the opposite side. While a pedestrian is required to exercise continued vigilance in crossing a street, he is not required to look constantly for approaching traffic: *Healy v. Shedaker*, 264 Pa. 512. "Just where he should look depends upon shifting conditions and is a question of fact rather than of law": *Mackin v. Patterson*, 270 Pa. 107, 110. And especially is this so when the pedestrian is invited to cross by a favorable traffic signal: *Newman v. Protective M. S. Co.*, supra, (p. 512).

Moreover, it does not appear from the evidence that plaintiff was negligent in proceeding toward the opposite corner after seeing the truck approaching: *Lamont v. Adams Express Co.*, 264 Pa. 17. She had the right to rely upon the assumption that the operator of the truck would not ignore the traffic signal, and her own rightful presence upon the crosswalk: *Villiger v. Yellow Cab Co. of Pittsburgh*, 309 Pa. 213; *Smith v. Wistar*, supra. Clearly this was a case for the jury to determine whether the driver exercised the degree of care required of him at a street crossing, and whether any lack of care on the part of plaintiff contributed to the accident: *Gilles v. Leas*, 282 Pa. 318. The jury having determined both questions in favor of plaintiff, we see no reason to disturb its findings.

A further question remains for discussion. Prior to bringing the present suit plaintiff sued the defendants upon the same cause of action to recover damages for the same injuries. In the trial of the first suit, at the conclusion of plaintiff's testimony, the trial judge entered a compulsory nonsuit. Thereafter the plaintiff filed a motion to remove the nonsuit, which was argued before the court in banc. Before a decision was rendered, however, plaintiff's attorney at the time, who is now deceased, presented an application to withdraw the motion to take off the nonsuit, and an order grant-

ing leave to do so was signed "By the Court." The costs in that proceeding were paid and the following day the present suit was instituted.

At the trial of this case the defendants offered in evidence the entire record of the former suit on the ground that it constituted a bar to the present suit under the doctrine of res judicata, and that, in any event, it was proper evidence as an admission by the plaintiff, that by not pressing the motion to take off the nonsuit, the action of the trial judge in the first case was proper. Both offers were rejected by the trial judge, and the evidence was not received.

By filing a motion to remove a nonsuit, the plaintiff submits the legal sufficiency of his case to the court in banc, with the same effect as though the defendant had demurred to the evidence. Its determination is a final judgment, and unless the plaintiff appeals therefrom and secures its reversal, that judgment is bar to a second suit against the defendant upon the same cause of action: *Finch v. Conrade's Exr.*, 154 Pa. 326, 328; *Scanlon v. Suter*, 158 Pa. 275; *Hartman v. Pittsburgh Incline Plane Co.*, 159 Pa. 442; *Fine v. Soifer*, 288 Pa. 164.

This well settled rule is without application to the question here presented, because the motion to remove the nonsuit was withdrawn before it was acted upon by the court in banc. The effect of the withdrawal of the motion was to place the record where it stood prior to the filing of the motion,—as though it had not been made: *Farne v. Penna. Lighting Co.*, 275 Pa. 444. In other words, it left upon the record merely the entry of a compulsory nonsuit, the existence of which, unaccompanied by a refusal of the court in banc to take it off, could not have the effect of res judicata as to a second suit: *Bliss v. Phila. Rapid Trans. Co.*, 73 Pa. Superior Ct. 173. See also *Bournonville v. Goodall*, 10 Pa. 133; *Fitzpatrick v. Riley*, 163 Pa. 65.

The mere entry of a nonsuit does not bar the right to bring a subsequent action: *Bournonville v. Goodall,* supra; *Cleary v. Quaker City Cab Co.,* 285 Pa. 241; *Fine v. Soifer,* supra. Accordingly, as the record in the first case is devoid of any judgment that operates as a bar to the institution of this suit by the plaintiff, it contained nothing that was relevant in support of the defendants' plea of res judicata. Therefore the action of the trial judge in refusing its admission was proper. As a discontinuance does not constitute either an adjudication by an appropriate tribunal, of a party's right of action or an acknowledgment that the claim is not good in law: *Sweigart v. Frey,* 8 S. & R. 299, it was proper here to reject the record as an admission.

Finally, it is urged by defendants in this connection that the order granting leave to withdraw and discontinue the motion to take off the nonsuit was invalid because it was granted by the trial judge alone. Defendants assert that once the motion to withdraw was submitted to the court in banc, it could be withdrawn and discontinued only with the consent of that body, and the order of a single judge was accordingly insufficient and invalid. This contention, however, is not supported by the record. It appears that the order was signed "By the Court", and there is no indication upon its face that it was improperly entered. If the defendants believed the discontinuance to have been irregular, they should have petitioned the court below, in the first suit, to strike it off. They cannot attack its validity collaterally in the present case. In *Lindsay v. Dutton,* 217 Pa. 148, we said (p. 149) : "If the discontinuance was improperly or illegally entered the defendants should have applied to the court to strike it off. So long as the record of that case shows that the suit has been discontinued, we must in this action, treat it as having been regularly and legally done."

There is no merit in defendants' complaint that they were prejudiced because certain additional instructions

490

were given by the trial judge to the jury, at their written request, in the absence of counsel for the parties. Thereafter, in open court, and in the presence of all parties and counsel, the trial judge again instructed the jury in response to the question which it had asked. It clearly appears that defendants were given full opportunity to suggest corrections or modifications with respect to the additional charge. Under these circumstances no harm was done defendants and we find nothing to warrant the granting of a new trial for such reason: *Cunningham v. Patton,* 6 Pa. 355; *Allegro v. Rural Valley Mut. Fire Ins. Co.,* 268 Pa. 333. See also *Noreika v. Penna. Indemnity Corp.,* 135 Pa. Superior Ct. 474.

The assignments of error are overruled and the judgment is affirmed.